Sally BONEY, Appellant,

v.

**MOTHER FRANCES HOSPITAL, Tyler, Texas d/b/a Mother Frances Regional Health Care Center, Appellee.**

No. 12–92–00306–CV.

Court of Appeals of Texas, Tyler.

May 31, 1994.

Rehearing Denied July 28, 1994.

William H. Berry, Jr. and Gail D.C. Dorn, Corpus Christi, Clifton L. Holmes, Longview, for appellant.

Tracy Crawford and Greg Smith, Tyler, for appellee.

Before RAMEY, C.J., and BILL BASS and HOLCOMB, JJ.

RAMEY, Chief Justice.

This is an appeal from a summary judgment in favor of one defendant, Mother Frances Hospital, Tyler, Texas, d/b/a Mother Frances Hospital Regional Health Care Center ("Hospital"), in a medical malpractice case. Sally Boney ("Boney") sued her physician/oral surgeon, Dr. Barry G. Acker ("Acker"), and the Hospital for actual and punitive damages resulting from Acker's implantation of a temporal mandibular joint ("TMJ") device in Boney's jaw at the Hospital. After the trial court granted the Hospital's motion for summary judgment, Boney's suit against the Hospital was severed and this appeal perfected. We will affirm the trial court's judgment.

In the summer of 1986, Boney consulted Acker with reference to complaints of increasing pain in her mouth and jaw and difficulty in opening her mouth. After completion of his testing and examination of Boney, Acker's diagnosis of Boney's condition was that she had an internal derangement of the craniomandibular joint on the right side. Acker prescribed a right craniomandibular joint arthroplasty with an implant. On August 4, 1986, Boney executed a consent for the surgery prepared by Acker which included a listing of risks and possible complications of the surgery.

The surgery was performed by Acker at the Hospital on August 6, 1986. August 6 was the first date that Boney had any contact with the Hospital or its personnel. Prior to commencement of the surgery on August 6, Boney executed the Hospital's "Disclosure and Consent Medical and Surgical Procedures" in which she acknowledged that Acker's consent form had informed her of "All Risks" as well as provided her consent to the anesthesia and the use of blood, products and services to be supplied by the Hospital. Boney has not complained about the Hospital's surgical services, its facilities or any aspect of the Hospital's care.

Subsequently, Boney experienced problems with the implant, including giant cell growth and bone deterioration, and later, removal of the implant. She sued Acker and the Hospital for negligence and gross negligence for failure to properly inform or make available sufficient information to Boney pertaining to these complications before implanting the device in her body.

The movant for summary judgment has the burden to show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In considering whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant is taken to be true. *Ibid.* Every reasonable inference is indulged in favor of the non-movant and any doubts are resolved in her favor. *Ibid.* If the movant's summary judgment proof facially establishes its right to judgment as a matter of law, the burden then shifts to the non-movant to raise a fact issue precluding the summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). To be entitled to a summary judgment, a defendant is required to disprove at least one essential element of each of the plaintiff's causes of action or otherwise show that plaintiff could not succeed on any theory pleaded. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975).

Boney assigns three points of error. Her first two points pertain to the Hospital's alleged breach of its duty to fully inform Boney of the risks of the mandibular surgery to be performed upon her in the Hospital. In her third point, Boney asserts that the Hospital's conduct was below the minimum standard of care for such hospitals, arising out of a specific pre-operative incident allegedly resulting in the infliction of emotional distress.

As to the first two points of error, informed consent causes of action against health care providers are governed by the Texas Medical Liability and Insurance Improvement Act. TEX.REV.CIV.STAT.ANN. art. 4590i (Vernon Supp.1989). They are negligence actions. *McKinley v. Stripling*, 763 S.W.2d 407, 409 (Tex.1989). Thus, for the plaintiff to prevail, there must be a duty by the Hospital to disclose medical risks and possible complications that could arise from the surgery as well as secure written in-

formed consent to the surgical procedure from the patient.

■ In Texas, this duty is imposed solely upon the treating doctor; it is his non-delegable duty. The hospital has no such duty of disclosure of medical or surgical risks, nor is it required to secure a patient's informed consent prior to surgery. *Gibson v. Methodist Hospital*, 822 S.W.2d 95 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Ritter v. Delaney*, 790 S.W.2d 29, 31 (Tex.App.—San Antonio 1990, writ denied); *Nevauex v. Park Place Hospital, Inc.*, 656 S.W.2d 923, 925 (Tex.App.—Beaumont 1983, writ ref'd n.r.e.); *see Urban v. Spohn*, 869 S.W.2d 450, 452 (Tex.App.—Corpus Christi 1993, writ denied). Boney contends that the Hospital is required by the Medical Liability Act to secure the patient's consent as a health care "provider". Article 4590i, §§ 6.02, 1.03. But the cited cases were decided after the Medical Liability Act became the law in Texas; as stated, they held that no such duty is imposed upon a hospital.

■ Boney argues that the Hospital negligently relied upon the consent secured by Acker, which did not explain all of the risks and hazards of the surgery. She urges that Acker's list of possible complications from the surgery did not specifically state that she could suffer from a bony absorption of the condyle or a giant cell granuloma growth as consequences of the surgery. Boney insists that she would not have consented to the surgery if apprised of these possible complications. But, again, in Texas the Hospital has no duty to secure the patient's consent to surgery.

Boney asserts that the Hospital's own policies and procedures required it to be assured that "the surgeon has disclosed the risks and hazards involved with the procedure". Here, the Hospital undertook to satisfy the requirement of risk disclosure by the attending physician by securing a representation from the patient that the risks were presented to her, by requiring her signature on a form that included the statement that she had been apprised of "all risks". This provision in the form was only intended to inform the Hospital that the surgical risks had been disclosed to the patient by the attending physician.

The Hospital had no duty to secure the patient's informed consent nor did it have the duty to oversee the doctor's listing of every risk that might arise from the surgical procedure.

■ Boney further argues that the Hospital was negligent in failing to apprise her of all of the risks and contraindications to surgery contained in the manufacturer's insert in the package received with the device to be implanted. The Hospital had secured various implant devices as ordered by Acker. At the time of Boney's surgery, the manufacturer's package insert with the device to be implanted asserted contraindications for the use of the device in patients with bruxism, as well as the potential for giant cell granuloma. Boney had a history of bruxism; Acker was aware of this condition but there is no summary judgment evidence that the Hospital was privy to this information or other aspects of Boney's history, examination, testing or diagnosis. Sometime after the surgery Boney was diagnosed to be suffering from giant cell granuloma. Prior to the surgery, the evidence shows that Acker had received this manufacturer's package insert and had read its contents; the same information was contained with the device held at the Hospital. Again, there was no duty imposed upon the Hospital to deliver the package inserts to Boney or to disclose their contents to her; as stated, the attending physician was charged with the responsibility of risk disclosure to his patient.

■ Boney also claims that the Hospital's record-keeping did not satisfy its minimum standard of care of Boney. This contention relates to the Hospital's disclosure form's reference to the device as a teflon implant; correctly, it should have been described as a "teflon-like" implant. The other claimed defect was the absence of a counter signature below Boney's. We observe at the outset that these contentions assume that the Hospital had a duty to secure execution of an informed consent form from the patient, which it did not. Furthermore, the negligible inaccuracy in the implant description was *de minimus* and could not have caused compensable injury harming Boney. The lack of

a witness' signature is likewise irrelevant as Boney admitted she had signed the Hospital's form.

 Boney also argues that the Hospital was negligent in respects unrelated to risk disclosure and her consent to the surgery. These allegations pertain to alleged improper monitoring of pathology taken from Boney as well as the Hospital's failures to have a committee to assure quality control of the procedures performed in the Hospital and not continually educating its staff to assure that proper procedures were performed. In essence these contentions would require a hospital to oversee and "second guess" the performance of the physicians working in the Hospital and ignores the clear mandate in Texas that medical decisions are to be made by attending physicians. No summary judgment evidence was adduced to raise a fact issue that the Hospital personnel in attendance upon Boney or Acker were negligent in their treatment of her. Furthermore, no points of error were assigned for the Hospital's alleged negligent conduct other that those pertaining to the breach of its duty to secure a proper informed consent. Such alleged negligence was not challenged by a ground or specific assignment of error and it is not necessary to consider the point. *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970). Boney's first two points of error are overruled.

 Boney's third point of error asserts that a material fact issue was raised that the Hospital's conduct fell below the minimum standard of care when a Hospital nurse told another patient within Boney's hearing that persons have expired while under anesthesia. Such remark is alleged to have given rise to the recovery of damages for infliction of emotional distress. The nurse apologized for making the statement in Boney's presence stating that her response to the other patient should have been uttered in a private room. There is no evidence that the remark was made intentionally in Boney's hearing. Boney acknowledges that under present Texas law and the facts of this case, there can be no recovery. *Boyles v. Kerr*, 855 S.W.2d 593 (Tex.1993). Boney's third point of error is overruled.

The summary judgment of the trial court against Boney in favor of the Hospital is affirmed.